IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Isai Rivas Dubon, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:22CV447 |
| Ur M. Jaddou, Director, United States Citizenship and Immigration Services, | ) ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

This matter is before the Court on the motion of Defendant Ur M. Jaddou, Director, United States Citizenship and Immigration Services ("USCIS"), to remand this action to USCIS pursuant to 8 U.S.C. § 1447(b) for an agency adjudication of Plaintiff Isai Rivas Dubon's naturalization application. (ECF No. 5.) The Court will grant USCIS's motion for remand.[1]

**I.  BACKGROUND**

Plaintiff is a native citizen and national of Honduras who has been a permanent resident of the United States since 2015. (ECF No. 1 ¶¶ 1, 8.) On August 17, 2020, Plaintiff filed an application with USCIS for naturalization, (*id.* ¶ 16), and on March 8, 2021, USCIS interviewed Plaintiff for naturalization pursuant to 8 U.S.C. § 1446, (*id.* ¶ 27). Since that

---

[1] Plaintiff has attempted to cross-move for summary judgment within the body of his brief in opposition to Defendant's motion to remand, (ECF No. 8 at 1, 5-8), however that motion is not properly before the Court because Plaintiff did not comply with Local Rule 7.3(a), which requires that "[e]ach motion shall be set out in a separate pleading."

interview, USCIS has not rendered a decision on Plaintiff's naturalization. (*Id.* ¶ 32.) Plaintiff therefore filed the instant action in this Court on June 13, 2022, seeking a judicial determination that he is eligible for naturalization, and an order that USCIS naturalize him. (*Id.* at 1.)

## II. STANDARD OF REVIEW

"When USCIS fails to make a decision on a naturalization application by the end of the 120-day period after the date of the applicant's interview with USCIS, the applicant may 'apply to the United States district court for the district in which [he] resides for a hearing on the matter.'" *Hernandez Alvarado v. Jaddou*, No. 20-cv-538, 2021 WL 7162561, at *2 (M.D.N.C. Aug. 19, 2021) (quoting 8 U.S.C. § 1447(b)). "A proper petition 'vests the district court with exclusive jurisdiction, unless and until the court 'remand[s] the matter' to the [US]CIS.'" *Id.* (quoting *Etape v. Chertoff*, 497 F.3d 379, 383 (4th Cir. 2007)). "The court 'may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.'" *Id.* (quoting 8 U.S.C. § 1447(b)).

Where USCIS moves to remand an 8 U.S.C. § 1447(b) action for agency determination, "it is entirely within the discretion of the court to either deny the motion to remand and assert jurisdiction or grant the motion to remand and allow the naturalization petition to be adjudicated by USCIS." *Grey v. Cissna*, 413 F. Supp. 3d 466, 469 (D.S.C. 2019) (quoting *Abusamhadneh v. Napolitano*, No. 10-cv-111, 2010 WL 1734772, at *1 (E.D. Va. Apr. 26, 2010)). One factor that courts consider when exercising this discretion is whether USCIS offers "good reasons" for its delay. *See Etape*, 497 F.3d at 387 n.5 (observing that under 8 U.S.C. § 1427(b) "a district court has the option to remand the matter to give the agency additional time" if the agency "has the good reasons for failing to act"); *see also Manzoor v. Chertoff*, 472 F. Supp. 2d

2

801, 809 (E.D. Va. 2007) ("Judicial intervention should . . . be reserved for those rare circumstances in which [USCIS] unnecessarily delays the adjudication of an application following the completion of all background checks."). Courts also consider whether USCIS gives assurances that it will act quickly on an application if the court orders remand, *Grey*, 413 F. Supp. 3d at 471, and a variety of policy issues, including whether an application presents issues that are particularly well-suited to resolution by an agency rather than a court, *id.* at 472.

In "the vast majority" of cases brought pursuant to § 1447(b), district courts "have remanded the matter back to [USCIS] with appropriate instructions, rather than determine the matter." *Manzoor*, 472 F. Supp. 2d at 810. "In the few cases where a district court opted to adjudicate the matter itself, the application had been pending for a lengthy period and the [agency] failed to assure the court that a swift decision could be made on remand." *Rashid v. Dep't of Homeland Sec.*, No. 14-cv-2109, 2017 WL 1398847, at *2 (E.D. Cal. Apr. 19, 2017).

### III.  DISCUSSION

The Court finds that remand to USCIS is appropriate. USCIS provides good reason for its delay in adjudicating Plaintiff's application. Furthermore, USCIS assures the Court that it will issue a decision on Plaintiff's application within fifteen days of remand. (ECF Nos. 6 at 5; 6-4 ¶ 7.) It is therefore fair and practical to remand this case to the agency. Such remand would allow the agency to make the initial (and, if favorable to Plaintiff, perhaps final) decision on Plaintiff's application, which is what Congress intended when enacting the naturalization statutes relevant to this case.

####  A.   USCIS Had Good Reason for Delay in This Case

USCIS states that the reason for its delay is that it was statutorily barred from considering Plaintiff's application due to the existence of a pending removal order against him. (ECF No. 6 at 3 (citing 8 U.S.C. § 1429 ("[N]o person shall be naturalized against whom there

3

is outstanding a final finding of deportability pursuant to a warrant of arrest . . . and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest . . . ."))); *Barnes v. Holder*, 625 F.3d 801, 806 (4th Cir. 2010) ("[U]nder § 1429, an alien in removal proceedings does not have a right to have his application adjudicated . . . .").

According to USCIS, Plaintiff initially entered the United States without inspection or admission on or about January 1999. (ECF No. 6 at 2.) He was later placed in removal proceedings, and he was ordered removed in May 2000. (*Id.*; ECF No. 6-1 at 1 (copy of removal order).) That removal order was still pending at the time that he filed his naturalization application, however, USCIS did not initially realize this because Plaintiff provided a different date of birth to immigration officials in 1999 than he did in his later immigration paperwork, thus the order was associated with a different alien registration number. (ECF No. 6 at 2–3.) USCIS explains that it discovered the pending removal order based on a fingerprint search while it was reviewing Plaintiff's naturalization application. (*Id.* at 3.)

Once USCIS became aware of the pending removal order, USCIS argues that it was forbidden by statute from considering Plaintiff's application further. (*Id.* (citing 8 U.S.C. § 1429).) Only after Plaintiff filed a Complaint with this Court—which deprived USCIS of jurisdiction over Plaintiff's application—did Plaintiff move the Immigration Court to terminate the removal proceedings. (*Id.* at 2.) The Immigration Court did so terminate the removal proceedings on August 11, 2022. (ECF No. 6-3 at 3 (order of Immigration Court).) Thus, according to USCIS, the agency has never had the opportunity to render a decision on

4

Plaintiff's application. If this Court remands this action, then that would be the first time that the agency has both jurisdiction over the application as well as statutory authority to act on it.

Plaintiff has not offered any substantive response to USCIS's explanation for the delay. (*See* ECF No. 8 at 2.) Plaintiff merely states that "[USCIS] identifies no good cause for the 18-month delay between the naturalization interviews and this lawsuit." (*Id.*) Plaintiff generally does not address the removal proceedings at all, either to deny that events transpired as USCIS contends or to deny the legal effect of the proceedings on USCIS's consideration of his application.[2]

The Court finds that USCIS had a good faith belief that it was statutorily barred from considering the application, and that this constitutes good reason for its delay and weighs in favor of remand. *See Etape*, 497 F.3d at 387 n.5 (endorsing remand where the agency has "good reasons" for delay).

The Court notes that it is not passing on the issue of whether USCIS was, in fact, legally barred from considering the application. USCIS has not claimed that a warrant was ever issued for Plaintiff's arrest; instead, the exhibits that USCIS has filed related to the removal proceeding only gave Plaintiff notice to appear. (ECF No. 6-1 at 2.) There is currently a circuit split regarding whether there must be a warrant authorizing law enforcement to arrest and detain an alien, rather than merely a notice to appear, before 8 U.S.C. § 1429 will bar consideration of a naturalization application. *Compare Klene v. Napolitano*, 697 F.3d 666, 670 (7th Cir. 2012) (deferring to agency interpretation that a "notice to appear" in a removal

---

[2] The only mention of the removal proceedings in Plaintiff's response brief is in a single sentence where he asserts that "[USCIS] in fact makes no attempt to explain or defend the delay between the interview and its decision to initiate removal proceedings." (ECF No. 8 at 2.) This statement does not make sense because, as shown by the signed and dated copy of the removal order that USCIS has filed in support of its motion, the removal proceedings were initiated long before Plaintiff filed his naturalization application. (ECF No. 6-1 at 1.)

5

proceeding should be treated as a "warrant of arrest" for the purposes of triggering 8 U.S.C. § 1429 bar), *with Yith v. Nielsen*, 881 F.3d 1155, 1168 (9th Cir. 2018) ("Because we determine that Congress clearly defined 'warrant of arrest' as a writ that issues to arrest and detain an alien, and is not the same as a notice to appear, we disagree with the Seventh Circuit's decision in *Klene*."); *see also Akpovi v. Douglas*, 43 F.4th 832, 835 n.3 (8th Cir. 2022) (recognizing circuit split). The Fourth Circuit has not decided this precise question. *See Hernandez Alvarado*, 2021 WL 7162561, at *2–3 (describing the argument that 8 U.S.C. § 1429 only prohibits consideration of a naturalization application if there is a removal proceeding pursuant to a "warrant of arrest" rather than a removal proceeding pursuant to a "notice to appear" with citation to Ninth Circuit authority and without rendering any decision on the issue).

If 8 U.S.C. § 1429 does not trigger unless there is a "warrant of arrest," and if a warrant of arrest was never issued for Plaintiff related to the removal proceedings, then it may be that the statute did not in fact bar USCIS from considering his application. *See id.* However, Plaintiff here has not challenged USCIS's interpretation or application of 8 U.S.C. § 1429. Under the circumstances of this case, the Court therefore limits its decision to a determination that, as evidenced by an acknowledged circuit split and Plaintiff's failure to challenge USCIS on this point, USCIS had a good faith reason to believe that it was legally barred from considering Plaintiff's application. This belief (shared by Plaintiff) that the bar had triggered suffices to justify the delay.[3]

---

[3] Because the Court finds that USCIS had good reasons for its delay, *Grey v. Cissna*, 413 F. Supp. 3d 466 (D.S.C. 2019), a case in which a court denied a motion for remand and which Plaintiff urges this Court to follow, (ECF No. 8 at 1), is distinguishable. In *Grey*, the court found that USCIS had not offered any good reason for its delay and described this failure as "fatal" to the motion to remand. *Grey*, 413 F. Supp. 3d at 470. *Grey* described the insufficient reasons as "a vague reference to an overburdened immigration system, a range of application processing wait times for which Grey's wait time has far exceeded, and a brief mention of the general involvement of the [Fraud Detection and National Security Division] in Grey's case." *Id.* at 471. Here, USCIS has articulated a specific and

6

### B. Remand is Practical and Accords with the Intent of Congress

The Court next addresses a group of related practical considerations. USCIS has put forward several arguments in favor of remand that share a common theme—because USCIS is the agency to which Congress gave primary responsibility for adjudicating naturalization applications, USCIS has special expertise in such matters and can therefore reach a decision that is correct and consistent with other naturalization cases faster and more efficiently than the Court. (ECF No. 6 at 3–5.) Plaintiff responds that remand is not appropriate here because this is a simple case that does not require agency expertise or additional development of the record at this juncture. (ECF No. 8 at 4.) Furthermore, according to Plaintiff, the fact that Congress created a path to a district court under 8 U.S.C. § 1447(b) for applicants whose applications were pending for longer than 120 days after their naturalization interview evinces a legislative intent that courts decide such cases rather than remand. (*Id.* at 3.) Plaintiff also argues that remand would be a futile waste of time and money since he anticipates that USCIS will deny his naturalization application, and then the application will ultimately return to this Court for *de novo* review after several years of costly administrative proceedings. (*Id.* at 4–5.) In sum, both parties contend that their proposed resolution is more efficient and is what Congress intended.

The Court finds that remand accords with the intent of Congress, which is that USCIS should adjudicate most naturalization applications to conserve judicial resources and prevent backlog in court dockets. There is no reason in this case that warrants deviating from this default scheme.

---

legitimate reason for its delay. Another point that distinguishes *Grey* is that in *Grey* USCIS also did not provide any assurance to the court that the matter would be resolved promptly if the court remanded. *Id.* at 471–72. Here, USCIS has committed to issuing a decision within fifteen days of remand. (ECF Nos. 6 at 5; 6-4 ¶ 7.)

7

"Prior to 1990, naturalization applicants faced a two-step process for adjudicating their naturalization applications." *Etape*, 497 F.3d at 385. "First, the Attorney General, after investigating and examining an applicant, recommended an outcome to the district court." *Id.* "Then, the district court reviewed the recommendation and either adopted it, modified it, or held a hearing on the naturalization application." *Id.* However, "this system proved unworkable because of the backlog it created on district courts' dockets." *Id.* at 386. Therefore, in 1990, Congress enacted legislation that gave the Attorney General the authority to naturalize new citizens without permission from a district court. *Id.* In this new system, "[i]f the [US]CIS denies an application, an applicant, after exhausting administrative remedies, may petition for *de novo* review in the district court." *Id.* (citing 8 U.S.C. § 1421(c)).

Within this system, the 8 U.S.C. § 1447(b) provision that allows an applicant to sue in district court if USCIS takes more than 120 days after an interview to render a decision was created "to ensure that applicants had judicial recourse when [USCIS] failed to act." *Id.* Typically, "the [USCIS] can and must employ much of its expertise and resources well before the district court can possibly act," and "[i]t is only when [USCIS] fails to evaluate the information it has gathered in a timely manner that a district court may step in." *Id.* at 386–87 (footnote omitted).

Here, Plaintiff's proposal that this Court retain jurisdiction is an attempt to shortcut past agency review. As set out previously, Plaintiff's own actions effectively prevented USCIS from issuing a decision on his application—he submitted his application despite having a removal order pending against him and did not attempt to terminate the removal proceedings until after he filed this lawsuit, causing USCIS to justifiably believe it was prohibited from acting on his application. Given this situation, Plaintiff's arguments that this case should not

8

be remanded because going through the agency process is time consuming and expensive are not persuasive. An applicant may not avoid USCIS by obstructing its review long enough to reach a district court via 8 U.S.C. § 1447(b). *See Manzoor*, 472 F. Supp. 2d at 809 (remanding 8 U.S.C. § 1447(b) action in part because "the court [did] not want to provide an incentive for naturalization applicants to file civil actions in an effort to expedite the naturalization process"); *Abusamhadneh*, 2010 WL 1734772, at *3 (same). Other applicants who do not have removal orders pending against them when they apply for naturalization must exhaust administrative remedies to reach a district court. Plaintiff cannot take advantage of his failure to timely terminate the removal order that had been pending against him under a different alien registration number for twenty years to place himself in a better position than those other applicants.

Moreover, if Plaintiff's representations that this is an "exceedingly narrow" case that can easily be decided in his favor based on review of his record without any great expenditure of judicial resources are correct, (ECF No. 8 at 4), then he is not any better off before this Court than he would be before USCIS. If this case is straightforward and one-sided, then Plaintiff should reasonably expect USCIS to approve his application as soon as it has both jurisdiction and statutory authorization to do so. Had Plaintiff acquiesced to remand several months ago when USCIS promised to issue a decision within fifteen days, Plaintiff might already be naturalized. Instead, Plaintiff decided to fight to remain before this Court.

According to Plaintiff, the reason that he believes district court is a more favorable forum for his application than USCIS is that litigation in district court affords him procedural protections, such as the opportunity to inspect the administrative record and to cross-examine witnesses, that a proceeding before USCIS does not. (ECF No. 8 at 5.) However, these

9

procedural protections are not costless, either to litigants or to the Court. They are also not always necessary. The hope of Congress in enacting the present system of agency review and exhaustion of administrative remedies prior to litigation before a district court was to avoid burdening the judicial system by allowing USCIS to independently approve naturalization without involving a court. *See Etape*, 497 F.3d at 385–87. Under the circumstances of this case, a refusal to remand to USCIS would thwart Congress by investing judicial resources before the USCIS has even had an opportunity to approve the application and thereby moot any need for additional proceedings.[4]

If, however, this case does eventually prove to be fraught enough that it must come before this Court for adjudication, then that too counsels in favor of allowing USCIS to have an opportunity to fully assess the issues and render its own decision first. *See INS v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) ("Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context. . . . The agency can bring its expertise to bear upon [a] matter; it can evaluate the evidence, it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides."). Even if a court's review of

---

[4] According to USCIS's reply brief in support of remand, there is a "possibility that [Plaintiff] might succeed at the agency level if his arguments have merit." (ECF No. 10 at 3.) However, in USCIS's brief opposing Plaintiff's improperly filed motion for summary judgment, USCIS has argued that Plaintiff "cannot establish the good moral character required for naturalization." (ECF No. 11 at 1.) To the extent that USCIS has actionable reasons to deny his application, then Plaintiff may benefit from litigating his application before this Court rather than first exhausting his administrative remedies—however, again, if the Court retained this case on that basis of an anticipated denial, then the Court would be offering an applicant an unfair shortcut based on prior obstruction of proceedings.

a naturalization application under 8 U.S.C. § 1421(c) is *de novo*, allowing additional development of the record and the issues prior to litigation conserves judicial resources.[5]

The Court therefore finds that remand is practical and consistent with the intent of Congress in this case.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that USCIS's Motion to Remand, (ECF No. 5), is **GRANTED**. The Court remands this action to USCIS for adjudication of Plaintiff's application for naturalization. USCIS is instructed to adjudicate Plaintiff's application within fifteen (15) days of this Order.

This, the 15th day of November 2022.

/s/ Loretta C. Biggs
United States District Judge

---

[5] Plaintiff argues that nothing will be added to the administrative record if this Court remands this action except to add that Plaintiff's application was denied, and that this addition will have no utility for the Court's de novo review. (ECF No. 8 at 4.) This argument is speculative. According to Plaintiff, during the administrative appeal process, he is permitted to "bring in documents to support his claim." (ECF No. 8 at 5.) It is therefore not inevitable that the only thing that will be added to the record for Plaintiff's application after remand is a bare, unreasoned denial.